# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD LAWRENCE, <br><br> Plaintiff, <br><br> v. <br><br> ECHO GLOBAL LOGISTICS, INC., DOUGLAS R. WAGGONER, SAMUEL K. SKINNER, MATTHEW FERGUSON, DAVID HABIGER, WILLIAM M. FARROW, III, and VIRGINIA L. HENKELS, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Echo Global Logistics, Inc. ("Echo Global" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which The Jordan Company, L.P. ("Parent") will acquire the Company through its affiliates Einstein MidCo, LLC ("Buyer") and Einstein Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On September 10 2021, Echo Global announced its entry into an Agreement and Plan

---

[1] Non-party Parent is a global private equity firm that was founded as a middle market private investment partnership focused on leverage buyouts and recapitalizations. Non-party Buyer is a Delaware corporation owned and controlled by funds managed by Parent. Non-party Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of Buyer.

of Merger dated the preceding day (the "Merger Agreement"). That agreement provides Echo Global stockholders will receive $41.00 in cash for each share of Company common stock they own (the "Merger Consideration").[2]

3.  On October 21, 2021, Echo Global filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Echo Global stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.  The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

---

[2] The approximate value of the Proposed Transaction is $7.3 billion.

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## **THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of Echo Global.

10. Defendant Echo Global is a Delaware corporation, with its principal executive offices located at 600 West Chicago Avenue, Suite 725, Chicago, Illinois 60654, and offices located at 1375 Peachtree St. NE, Atlanta, GA, 30309. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ECHO."

11. Defendant Douglas R. Waggoner ("Waggoner") has been Chairman of the Board since June 2015, Chief Executive Officer ("CEO") of the Company since December 2006, and a director since February 2008.

12. Defendant Samuel K. Skinner ("Skinner") has been Lead Independent Director since June 2017, and a director of the Company since September 2006. Defendant Skinner previously served as non-executive Chairman of the Board from February 2007 to June 2015.

13. Defendant Matthew Ferguson ("Ferguson") is and has been a director of the Company since February 2010.

14. Defendant David Habiger ("Habiger") is and has been a director of the Company since December 2012.

15. Defendant William M. Farrow, III ("Farrow") is and has been a director of the Company since June 2017.

16. Defendant Virginia L. Henkels ("Henkels") is and has been a director of the Company since September 2018.

17.     Defendants identified in paragraphs 11-16 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18.     On September 10, 2021, Echo Global announced in relevant part:

CHICAGO and NEW YORK, Sept. 10, 2021 -- Echo Global Logistics, Inc. (Nasdaq: ECHO) ("Echo"), a leading provider of technology-enabled transportation and supply chain management services, today announced that it has entered into a definitive agreement to be acquired by funds managed by The Jordan Company, L.P. ("TJC"), a global private equity firm, for an equity value of approximately $1.3 billion. Through this transaction, Echo will become a private company which it expects will provide additional resources and greater flexibility to continue to build its technology and data science platform and enhance its value proposition to shippers and carriers. Additionally, the transaction will allow Echo to benefit from the operating capabilities, capital support and sector expertise of The Jordan Company.

**Transaction Details**

Under the terms of the agreement, Echo stockholders will receive $48.25 per share in cash, which represents a premium of approximately 54% over Echo's closing share price on September 9, 2021 and a premium of approximately 32% over Echo's all time high closing share price on September 10, 2018. Echo believes that the transaction provides its stockholders with an attractive premium that delivers immediate compelling value for their shares. The definitive agreement was unanimously approved by Echo's Board of Directors, which recommended that Echo's stockholders approve the agreement.

The acquisition is subject to customary closing conditions, including stockholder approval and the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The transaction is expected to be completed in the fourth quarter of 2021. The closing is not subject to a financing condition.

"I'm thrilled to partner with TJC as they bring significant expertise and industry experience to enable Echo to further accelerate our success in the market," said Doug Waggoner, Chairman of the Board of Directors and Chief Executive Officer at Echo. "In addition, having an experienced financial partner, with resources to fund continued growth, will result in a more rapid expansion of Echo's supply chain capabilities, including all of the automation planned to enable both our people and our digital freight marketplace."

"We are impressed with Echo's people, technology, and business results, since their founding in 2005, and are excited that Echo's leadership selected TJC as their partner

in this recapitalization," said Brian Higgins, head of TJC's logistics and supply chain vertical.  "We strongly support the team's vision for continued growth and look forward to partnering with them as we bring expanded financial resources and expertise to accelerate Echo's technology leadership that has set the company apart from its competitors."

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Echo, and Winston & Strawn LLP is serving as legal counsel to Echo.  Citi is serving as financial advisor to TJC and Kirkland & Ellis LLP is serving as legal counsel to TJC.  Credit Suisse AG and Citi will provide financing for the transaction.

**The Proxy Statement Contains Material Misstatements or Omissions**

19. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Echo Global's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

20. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the (a) Company's financial projections and the valuation analyses underlying the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (b) Morgan Stanley's potential conflicts of interest.

*Material Omissions Concerning the Company's Projections and the Financial Analyses Relied on by the Board*

21. The Proxy Statement omits material information regarding the Company's financial projections, including the Company's future unlevered free cash flows for the third and fourth calendar quarters in 2021 and each of the fiscal years 2022 through 2025 and the line items underlying the Company's unlevered free cash flows.  *See* Proxy Statement at 44 (concerning Morgan Stanley's use of "estimates of future unlevered free cash flows for the third and fourth calendar quarters in 2021

5

and each of the fiscal years 2022 through 2025" in connection with its *Discounted Cash Flow Analysis*).

22.     The Proxy Statement fails to disclose the line items underlying the Company's financial forecasts for (a) Adjusted Gross Profit; (b) Adjusted EBITDA; and (c) Adjusted EBITDA less Capital Expenditures.

23.     The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Morgan Stanley.

24.     The Proxy Statement describes Morgan Stanley's fairness opinion and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Morgan Stanley's work. As a result, Echo Global stockholders cannot assess what significance to place on Morgan Stanley's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

25.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the Company's future unlevered free cash flows for the third and fourth calendar quarters in 2021 and each of the fiscal years 2022 through 2025; (b) the Company's terminal values; (c) the inputs and assumptions underlying the range of discount rates utilized by Morgan Stanley in connection with the analysis; and (d) the number of shares of Echo Global stock outstanding used to calculate the range of implied present values per share.

26.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rate utilized in connection with that analysis.

27.     With respect to Morgan Stanley's *Publicly Traded Comparable Companies Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to include the individual financial

metrics for the comparable companies and multiples and financial metrics for each of the transactions analyzed, respectively.

28. The omission of this information renders the statements in the "Certain Echo Unaudited Prospective Financial Information" and "Opinion of Morgan Stanley" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

29. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley, including the total compensation Morgan Stanley has received from Parent and its affiliates in connection with financing services provided thereto. *See* Proxy Statement at 48.

30. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

31. The omission of this material information renders the statements in the "Opinion of Morgan Stanley" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

32. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Echo Global stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

33. Plaintiff repeats all previous allegations as if set forth in full.

34. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

39. Plaintiff repeats all previous allegations as if set forth in full.

40. The Individual Defendants acted as controlling persons of Echo Global within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Echo Global, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Echo Global's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Echo Global, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Echo Global stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  November 4, 2021                    **LONG LAW, LLC**


                                By   */s/ Brian D. Long*
                                     Brian D. Long (#4347)
                                     3828 Kennett Pike, Suite 208
                                     Wilmington, DE 19807
                                     Telephone: (302) 729-9100
                                     Email: BDLong@longlawde.com

                                     *Attorneys for Plaintiff*